(No. 64667.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES FREE, Appellant.

*Opinion filed February 11, 1988.—Rehearing denied May 31, 1988.*

RYAN, J., specially concurring.
CLARK and SIMON, JJ., dissenting.

Charles M. Schiedel, Deputy Defender, and Theodore A. Gottfried, State Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, James Free, brings this appeal from the dismissal of his second post-conviction petition. In

1979 the defendant was convicted in a jury trial in the circuit court of Du Page County on one count each of murder and attempted murder and on two counts of attempted rape. The jury sentenced the defendant to death for the murder conviction, and the trial judge imposed terms of imprisonment for the other offenses. On direct appeal this court affirmed the defendant's convictions and sentences (*People v. Free* (1983), 94 Ill. 2d 379), and the United States Supreme Court denied review (*Free v. Illinois* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200). The defendant then filed a petition for post-conviction relief; the circuit court dismissed the petition, we affirmed that decision (*People v. Free* (1986), 112 Ill. 2d 154), and the United States Supreme Court again denied review (*Free v. Illinois* (1986), 479 U.S. 871, 93 L. Ed. 2d 170, 107 S. Ct. 246). Following those proceedings, the defendant filed a second post-conviction petition, the subject of the instant appeal. The circuit court dismissed the petition, and the matter is here on direct review (see 107 Ill. 2d R. 651(a)).

The defendant's convictions stem from his attack on two women, Bonnie Serpico and Lori Rowe, at an office complex in Glen Ellyn on April 24, 1978. Around 4 o'clock that morning the defendant appeared in the office where the women were working and threatened to rape them; the defendant was armed with a gun and was carrying a cloth bag. After directing the two women to a back room, the defendant ordered Rowe to remove her clothing, and he then bound her hands and feet with rope, which he had brought with him. Following that, the defendant took Serpico to another room, where she undressed. When the defendant returned to check on Rowe, he found that she had loosened her bindings; as the defendant was tightening them, Serpico ran from the other room. The defendant chased after Serpico and shot her. The defendant then came back to where Rowe was,

shot her, and fled from the building. Serpico died as a result of her gunshot wound. Rowe survived her injury, and she testified at the defendant's trial.

The grounds for relief asserted in the defendant's second post-conviction petition all relate to the State's introduction at the sentencing hearing of evidence concerning the psychological and emotional effects of the crimes on Mrs. Serpico's surviving family members and on Lori Rowe. The information complained of was presented in the testimony of Deborah Ahlstrand, a Du Page County probation officer who had prepared a presentence investigation report for the case. The presentence investigation was done at the defendant's request and over the State's objection. (*People v. Free* (1983), 94 Ill. 2d 378, 415.) By statute, the investigator was required to ascertain "the defendant's history of delinquency or criminality, physical and mental history and condition, family situation and background, economic status, education, occupation and personal habits," as well as "the effect the offense committed has had upon the victim or victims thereof." (Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—3—2(a)(1), (a)(3).) As this court noted in the two previous appeals, defense counsel made a number of objections at the sentencing hearing to Ahlstrand's testimony, but he did not object on grounds that the victim impact evidence was prejudicial, inflammatory, or irrelevant. (See *People v. Free* (1986), 112 Ill. 2d 154, 170; *People v. Free* (1983), 94 Ill. 2d 378, 425.) Rather, counsel moved *in limine* to bar admission of the presentence report and testimony because he believed that the material was conclusory and would be hearsay; the trial judge said that he would consider those objections on a question-by-question basis.

At the sentencing hearing, Ahlstrand testified that in connection with her investigation she had met with Bonnie Serpico's husband, their two daughters, aged 13 and

12, and Mrs. Serpico's mother. The meeting took place in July 1979, several weeks before the sentencing hearing was held. Ahlstrand learned that the family had moved sometime after the murder because of the painful memories their old house held for them. Mr. Serpico told Ahlstrand that he felt "shut out" by events and that friends seemed uncomfortable with the situation. For about a month after his wife's death he had a drinking problem. The two girls said that their father had become more protective of them. According to Ahlstrand, what Mr. Serpico described as "the greatest loss" was that his daughters would be deprived of a maternal relationship while they were growing up, entering adulthood, and starting families of their own. Mr. Serpico also told Ahlstrand that his wife's mother had had a difficult year. One week after the murder, her husband died of cancer, and she required tranquilizers following that. Ahlstrand testified that she had also spoken with Lori Rowe's parents in July 1979—Lori was out of the country at the time and therefore was not available for an interview. Rowe's parents related that their daughter had become suspicious of strangers and that she was bothered by having to testify at trial. On cross-examination, defense counsel elicited some additional information regarding both Lori Rowe and the Serpico family. Defense counsel also asked Ahlstrand about the defendant. From her investigation, she learned that the defendant had a good work record, was an average to above-average student in high school, did not have a record of delinquency in the county where he lived as a juvenile, did not have a record of psychological abnormalities, and had entered the service, where he was rated highly by a commanding officer. Finally, Ahlstrand testified to the defendant's expressions of remorse for the crimes here. Defense counsel did not object to the victim impact testimony on the

grounds that it was prejudicial, inflammatory, or irrelevant.

In his second post-conviction petition, filed October 9, 1986, the defendant contended that the victim impact evidence described above was inadmissible under the prior decisions of this court and as a matter of Federal constitutional law. The defendant also contended that trial counsel was ineffective for failing to make an appropriate objection to the evidence, and that the attorneys who had handled the subsequent proceedings in the case—the initial direct appeal to this court, the submission of the first post-conviction petition in the circuit court, and the direct appeal of its dismissal—were ineffective for failing to challenge the competence of their predecessors, including trial counsel, with respect to the State's use of the victim impact evidence at the sentencing hearing. Several affidavits were submitted by counsel in support of those claims, outlining the reasons why those issues had not been pursued at the various stages of the case.

On the State's motion, the circuit judge dismissed the defendant's second post-conviction petition. The circuit judge believed that the defendant's original trial counsel may have decided not to make the objection now urged by the defendant in light of the broad range of evidence admissible in the second part of a death penalty hearing (see Ill. Rev. Stat. 1979, ch. 38, par. 9—1(e)). The circuit judge noted that the State's evidence here did not preclude the defendant from offering mitigating evidence. Applying the standard set out in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for gauging claims of ineffective assistance, the circuit judge concluded that trial counsel was not ineffective.

In this appeal the defendant contends that the probation officer's testimony was inadmissible under both Federal and State law, that trial counsel was ineffective for

failing to object to it on grounds that it was prejudicial, inflammatory, or irrelevant, and that the attorney who handled the initial post-conviction proceedings in the circuit court was ineffective for failing to assert the ineffectiveness of trial counsel as a ground for relief. The defendant does not challenge here the competency of counsel in either of his previous appeals to this court.

We are aware that after oral arguments were held in this court, the United States Supreme Court ruled on the merits of the issue that underlies the defendant's claims for relief here. In *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, the court held that victim impact evidence is not admissible at a capital sentencing hearing. *Booth* involved a victim impact statement that had been compiled from interviews with the surviving family members of an elderly married couple who had been murdered in their home. The statement contained an extensive summary of the effects of the murders on the family, and defense counsel moved to bar the use of the information at the capital sentencing hearing on grounds that it was irrelevant and inflammatory. The trial judge denied the motion; the prosecutor then agreed to counsel's suggestion that the statement be read to the jury, so that the family members would not have to testify. (*Booth*, 482 U.S. at 500-01, 96 L. Ed. 2d at 447, 107 S. Ct. at 2532.) The Supreme Court held that use of the victim impact statement violated the eighth amendment to the Federal Constitution. The Court believed that the information was irrelevant in a death penalty hearing and would only divert the jury's attention from its consideration of the circumstances of the offense and the character and nature of the defendant. Additionally, the Court did not believe that a jury's decision whether to impose the death penalty in a particular case should be allowed to turn on differences in the willingness or ability of surviving family members to ar-

ticulate their grief, or on the victim's standing in the community. Moreover, the Court in *Booth* feared that a defendant's efforts to rebut the victim impact information could distract the jury from its consideration of the defendant and his offense. (*Booth*, 482 U.S. at 504-07, 96 L. Ed. 2d at 449-51, 107 S. Ct. at 2533-35.) The victim impact statement used in that case also contained family members' thoughts and feelings about the crimes and the defendant, and the Court held that information of that type was similarly inadmissible at a capital sentencing hearing. *Booth*, 482 U.S. at 508-09, 96 L. Ed. 2d 451-52, 107 S. Ct. at 2535-36.

At the death penalty hearing conducted in this case, probation officer Ahlstrand testified concerning the effects of the crimes on the murder victim's surviving family members and on the woman who survived the attack. Evidence of that nature would now be barred by *Booth*. In the original post-conviction proceeding, the defendant filed a petition *pro se*, and appointed counsel later submitted an amended version that incorporated the defendant's own petition and asserted a number of additional grounds for relief. We note that among the issues raised in the amended petition was one alleging a denial of equal protection and due process because of "the Illinois Court[']s inconsistent decisions on death penalty cases as to the admission of evidence relating to the effect of the death on the victim's family"; the amended petition did not also challenge trial counsel's competency in failing to preserve that issue for review, though several other ineffective-assistance claims were made. The trial judge dismissed the amended petition, and this court affirmed the dismissal. (*People v. Free* (1986), 112 Ill. 2d 154.) That the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, pars. 122—1 through 122—8) contemplates the filing of only one post-conviction petition is made clear by section 122—3, which provides, "Any claim of substantial

denial of constitutional rights not raised in the original or in an amended petition is waived." (Ill. Rev. Stat. 1985, ch. 38, par. 122–3.) Consistent with that provision, this court has held that a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition. *People v. Richeson* (1971), 50 Ill. 2d 46; *People v. Le May* (1969), 44 Ill. 2d 58.

To be sure, section 122–3 is not an ironclad bar on multiple post-conviction petitions, but in those cases in which the court has allowed the filing of successive post-conviction petitions, the proceedings on the original petitions were deficient in some fundamental way. (See, *e.g.,* *People v. Nichols* (1972), 51 Ill. 2d 244, 246 (original post-conviction petition erroneously dismissed without counsel having been appointed); *People v. Hollins* (1972), 51 Ill. 2d 68, 70 ("Our examination of the record of the prior [post-conviction] proceeding fails to disclose any effort by appointed counsel, in either the trial court or this court, to amend the *pro se* petition or argue any issue other than to oppose the People's contention that the [original] post-conviction petition was not timely filed"); *People v. Slaughter* (1968), 39 Ill. 2d 278 (reversing orders dismissing original post-conviction petition, denying leave to amend original petition, and dismissing second petition; inadequate representation in original proceedings apparent from counsel's mere repetition, at hearing on motion to dismiss, of conclusory allegations in defendant's *pro se* petition).) We do not believe that a similar complaint may be made here. Unlike the virtual nullities that occurred in *Nichols*, *Hollins*, and *Slaughter*, the proceedings conducted in this case on the defendant's original post-conviction petition were not fundamentally deficient. Because the defendant has already had "one complete opportunity to show a substantial denial of his constitutional rights" (*People v. Logan* (1978), 72 Ill. 2d

358, 370), the second post-conviction petition was properly dismissed.

The defendant has made no attempt here to justify our consideration of his second post-conviction petition. Moreover, the only portion of the transcript of the sentencing hearing included in the record here is the one volume containing the probation officer's testimony; without a more complete record, we are unable to ascertain the full effect in this case of the presentation of the victim impact evidence, and of trial counsel's procedural default in failing to preserve the issue for review. If we were to examine those issues, we still would not be required to disregard the State's substantial and legitimate interest in the finality of the defendant's convictions. In dissent, Justice Simon argues in favor of considering the claims in the defendant's second post-conviction petition under the "plain error" rule. (See 107 Ill. 2d R. 615(a) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court").) That argument misconstrues the nature and purpose of the post-conviction remedy, which is collateral to a judgment of conviction and is not designed to provide a convicted defendant with yet another opportunity for direct review of the original trial proceedings. In a case involving a Federal prisoner's *habeas* petition, *United States v. Frady* (1982), 456 U.S. 152, 71 L. Ed. 2d 816, 102 S. Ct. 1584, the Supreme Court refused to consider a procedurally defaulted claim under the plain error standard contained in Rule 52(b) of the Federal Rules of Criminal Procedure. Rule 52(b) provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The court believed that use of the plain error standard was "out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the final-

ity of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal." (*Frady*, 456 U.S. at 164, 71 L. Ed. 2d at 827-28, 102 S. Ct. at 1592.) In the Court's view, use of the plain error standard in the collateral proceeding would accord "no significance whatever to the existence of a final judgment perfected by appeal." (*Frady*, 456 U.S. at 164, 71 L. Ed. 2d at 828, 102 S. Ct. at 1592.) By the same token, application of the plain error standard provided by our Rule 615(a) to the defendant's procedurally defaulted claims in a postconviction proceeding, such as this, would deny the State's legitimate interest in the finality of the defendant's convictions, which this court affirmed in 1983 on direct appeal.

Moreover, defense counsel may have believed that the defendant derived some benefit from the probation officer's testimony at the sentencing hearing; it should be noted that this court has since held that a defendant may not compel the preparation of a presentence investigation report in a capital case (*People v. Gaines* (1981), 88 Ill. 2d 342). In this case, the defendant testified at trial but not, apparently, at the sentencing hearing. The defendant had no right of allocution at the sentencing hearing (*People v. Perez* (1985), 108 Ill. 2d 70, 89; *People v. Williams* (1983), 97 Ill. 2d 252, 303-04; *People v. Gaines* (1981), 88 Ill. 2d 342, 374-80), but defense counsel was able to present, through the testimony of Ahlstrand, the defendant's expressions of remorse for what had happened here without having the defendant subjected to the State's cross-examination. In addition, Ahlstrand described on cross-examination favorable information that her presentence investigation had revealed concerning the defendant.

For the reasons stated, the judgment of the circuit court of Du Page County is affirmed. The clerk of this

court is directed to enter an order setting Thursday, May 26, 1988, as the date on which the sentence of death entered in the circuit court is to be carried out. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 119—5). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where the defendant is confined.

*Judgment affirmed.*

JUSTICE RYAN, specially concurring:

I concur in the holding and the reasoning of the majority opinion. I write briefly in this special concurrence for the purpose of discussing waiver and the term "procedural default," which appears in the majority opinion. In the past, this court has not used the term "procedural default," but has used the term "waiver" in referring to situations where the procedural default concept would be more appropriate; that is, when considering the effect of a failure to object at trial on the right to raise an issue on review. See *People v. Carlson* (1980), 79 Ill. 2d 564, 576; *People v. Green* (1979), 74 Ill. 2d 444, 453-54 (Ryan, J., specially concurring).

Waiver is an intelligent relinquishment of a known right of a privilege. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023.) Procedural default, on the other hand, relates to a failure by counsel to comply with certain procedural requirements which results in the forfeiture of the right to raise error on appeal. For a scholarly, detailed discussion of procedural default in Illinois, see Wangerin, *"Plain Error" and "Fundamental Fairness": Toward a Definition of Exceptions to the Rules of Procedural Default,*

29 De Paul L. Rev. 753 (1980). The case now before us involves procedural default, and not waiver. The dissent quotes language from the Supreme Court, stating " 'courts indulge in every reasonable presumption against waiver' of fundamental constitutional rights," citing *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023, and *People v. Haskell* (1968), 41 Ill. 2d 25, 31. These cases involved questions of waiver, and not the forfeiture of the right to raise an issue by virtue of failing to comply with certain procedural requirements. Thus, the quoted language in the dissent and the citations are not relevant to the question now before this court. (After I circulated this specially concurring opinion, Justice Simon altered his dissent and removed the quoted language and citations which I have referred to above as being not relevant to the question now before this court. Because this court has used the term "waiver" as including two different concepts, and because I feel that it is important that we recognize the distinctions mentioned in this paragraph, I have elected not to alter this concurring opinion following the removal of the irrelevant material from the dissent.)

If, by failure to object at trial, some evidence which may be constitutionally objectionable goes to the jury, we have a "waiver" of trial error by virtue of procedural default. This court has held that through procedural default (waiver), errors that may have occurred at trial are forfeited and may not be raised on review, even though they may have involved constitutional questions. (See *People v. Green* (1979), 74 Ill. 2d 444, 453-54 (Ryan, J., specially concurring); *People v. Precup* (1978), 73 Ill. 2d 7, 16; *People v. Pickett* (1973), 54 Ill. 2d 280.) In fact, if there was no objection for the court to overrule and the court had no opportunity to pass on the admissibility of

the evidence, it can be argued that there was no error, unless the doctrine of plain error is involved.

JUSTICE CLARK, dissenting:

I respectfully dissent.

At the defendant's sentencing hearing, a probation officer was allowed to testify as to the emotional and psychological effects of the defendant's crime upon surviving members of the victim's family. As the majority freely concedes, this was error, and error of Federal constitutional magnitude. (*Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529.) The majority manages, nevertheless, to hold that the defendant's sentence of death does not violate the Federal Constitution.

I am not sure that I understand how the majority reaches this result. While acknowledging that the defendant's claim of incompetence also puts into issue the merits of his original claim that he was prejudiced by the admission of victim impact evidence (122 Ill. 2d at 373), the majority goes on to slight the merits of the victim impact claim in favor of the claim of incompetence. Assuming, apparently, that the defendant's trial counsel waived the victim impact claim at sentencing, the majority then goes on to hold that a claim of counsel's incompetence in thus waiving the victim impact issue has in turn been waived by the defendant's failure to raise this claim of incompetence on his first post-conviction petition.

A review of the entire sequence of events reveals that the issue of victim impact sentencing is properly preserved for our review.

At the time of Free's initial appeal, the majority opinion affirming his death sentence reached two alternative holdings on the victim impact issue. The majority first held that the "failure to object to the admission of this

evidence operates as a waiver of the right to consider the question on appeal." (*People v. Free* (1983), 94 Ill. 2d 378, 425 (hereinafter *Free I*).) After stating that Free had waived the issue, however, the majority went on to consider the merits of his claim, stating that: "This court has held that testimony pertaining to a victim's surviving family is improper. (*People v. Bernette* (1964), 30 Ill. 2d 359.) However, the evidence complained of was not introduced at the guilt phase of the trial, or at the phase wherein the existence of aggravating factors must be proved." *Free I*, 94 Ill. 2d at 425-26.

The second alternative was essential to the majority's opinion because of the plain error rule. Error of constitutional dimension, which affects substantial rights, is plain error (see *People v. Wagner* (1982), 89 Ill. 2d 308, 311), which will preclude the operation of the waiver doctrine. If admission of victim impact evidence violated the eighth amendment to the United States Constitution, then the failure to object to such evidence could not operate as a waiver. It was therefore necessary for the *Free I* majority to consider whether admission of victim impact evidence violated Free's substantive eighth amendment rights.

The first *Free* majority concluded that the admission of such evidence during the aggravation-mitigation phase of the sentencing hearing did not violate Free's constitutional rights. *Free I*, 94 Ill. 2d at 425-26.

It is now clear from *Booth* that the *Free I* majority (Simon and Clark, JJ., dissenting) erred as to the substantive issue. However, the majority fails to acknowledge that *Booth* tacitly overrules the *Free I* court's holding as to waiver; for if victim impact evidence implicates substantial constitutional rights, its admission must be plain error, and the waiver doctrine cannot apply.

Given this conclusion, the next question must be: Has the defendant nevertheless waived the victim impact is-

sue by failing to raise it in either of his two post-conviction petitions? I believe the answer must be no.

As to Free's first post-conviction petition, the majority acknowledges that Free alleged a denial of equal protection and due process because of "the Illinois Court[']s inconsistent decisions on death penalty cases as to the admission of evidence relating to the effect of the death on the victim's family." (122 Ill. 2d at 375.) This claim was rejected, again on the ground of waiver. (*People v. Free* (1986), 112 Ill. 2d 154 (hereinafter *Free II*).) In his second petition, the one presently before us, Free again contends that the victim impact evidence "was inadmissible under the prior decisions of this court and as a matter of Federal constitutional law." 122 Ill. 2d at 373.

I do not understand how the majority supports its conclusion that either of these two petitions waived the issue of the victim impact statement's admissibility. The majority opinion deals only with the waiver of the competence issue, which, after *Booth*, is clearly peripheral to the defendant's major claim.

Moreover, I cannot accept the majority's position as to the waiver of either issue for two additional reasons.

First, the acceptance of the majority's position would place attorneys representing death-row inmates on their post-conviction appeals in a difficult ethical bind.

Normally in such a case, all properly preserved and nonfrivolous issues will have been considered by us on direct review, since death sentences and the underlying convictions upon which they are based may be appealed to this court as a matter of right. (107 Ill. 2d R. 609.) Post-conviction counsel may believe, perhaps rightly, that our determinations of these issues will nevertheless be eventually overturned by the United States Supreme Court. How then should counsel proceed? If he simply re-raises the issues argued on direct appeal, he may fall afoul of Rule 7—102 of the Code of Professional Respon-

sibility, which provides that an attorney shall not "knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by a good-faith argument for an extension, modification, or reversal of existing law." (107 Ill. 2d R. 7—102.) If counsel nevertheless files a petition and omits a particular claim, he will have, according to the majority, deprived his client of the right to re-raise such a claim on a subsequent petition. Lastly, if he files no petition at all and simply waits for a favorable ruling from the United States Supreme Court in a case similar to that of his client, he is powerless to prevent his client from being killed by lethal injection. He must choose between the Scylla of waiver and the Charybdis of execution.

Confronted with this dilemma, Free's attorney on his first post-conviction petition rephrased what was originally an eighth amendment claim as an equal protection claim so as to make a good-faith argument for the overruling of *Free I*. His attorney on his second post-conviction petition similarly rephrased it as a claim based upon the incompetence of counsel. Both attorneys were acting out of respect for this court's rulings in *Free I* and *Free II*. Rather than merely assert the court was mistaken, they used novel arguments in a good-faith attempt to convince the court to rule in their favor.

Second, I believe that the invocation of the waiver doctrine may not always be appropriate in a case which involves a death sentence clearly premised upon inadmissible evidence. More than the life of this one defendant is at stake. As the United States Supreme Court has stated: "It is of vital importance to the defendant *and to the community* that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice and emotion." (Emphasis added.) *Gardner*

*v. Florida* (1977), 430 U.S. 349, 358, 51 L. Ed. 2d 393, 402, 97 S. Ct. 1197, 1204.

The court's decision in *Free I* was explicitly premised upon the proposition that the rules of evidence are not applicable to capital sentencing hearings. The majority continues to adhere to this principle despite the fact that death sentencing hearings, unlike any other form of sentencing, may involve juries rather than judges. It is now clear, especially after *Booth*, that the majority's approach to death sentencing is not entirely correct. Death sentencing should not be a verbal free-for-all in which both prosecution and defense search for "the most colorful attention getter" that will divert the jury's attention. (*People v. Free* (1983), 94 Ill. 2d 378, 433 (Clark, J., concurring in part and dissenting in part).) I can only repeat what I said in the original *Free* case, and urge this court to adopt the following rules of evidence for capital sentencing hearings:

"If the evidence offered is extraneous to the facts and circumstances of the case or the character of the defendant, it is not admissible; if it would tend to divert the jury's attention from the aggravating or mitigating factors before them, it should be excluded; and if the evidence impinges upon any fundamental constitutional guarantee, it cannot be admitted at the sentencing hearing." *People v. Free* (1983), 94 Ill. 2d 378, 433 (Clark, J., concurring in part and dissenting in part).

JUSTICE SIMON joins in this dissent.

JUSTICE SIMON, also dissenting:

"This Constitution *** shall be the supreme law of the land; and the Judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const., art. VI, cl. 2.

"Justice, justice you shall pursue ***." *Deuteronomy* 16:20.

I join in Justice Clark's dissent and write to make some additional observations. In affirming the trial court's imposition of the death penalty in this case, the majority disregards both fundamental principles of justice and this court's obligation to uphold the United States Constitution as the supreme law of the land. The Supreme Court recently ruled that the admission of testimony regarding the impact of the victim's death on the victim's family members in a capital sentencing hearing violates defendants' constitutional right not to be sentenced to death in an arbitrary and capricious manner. This is the rule of law that should control the disposition of this case rather than the doctrine of waiver, which the majority applies to avoid this clear mandate.

In *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, the Supreme Court held that admission of victim impact evidence at a capital sentencing hearing violates the eighth amendment to the Constitution. The victim impact statement in *Booth* reflected interviews with the victims' family and described the personal characteristics of the victims and the emotional impact of their deaths on the family. It also included the family members' opinions of the crimes as well as their opinions of the defendant. The statement was read to the jury during the defendant's capital sentencing hearing.

Information in a victim impact statement, the Court decided, is irrelevant to the blameworthiness of a particular defendant, and the introduction of the statement and the defendant's efforts to rebut it "could well distract the sentencing jury from its constitutionally required task—determining whether the death penalty is appropriate in light of the background and record of the accused and the particular circumstances of the crime." (*Booth v. Maryland* (1987), 482 U.S. 496, 507, 96 L. Ed.

2d 440, 451, 107 S. Ct. 2529, 2535.) The Court also emphasized that the decision whether to impose the death penalty should not turn on the victim's standing in the community or the ability of family members to articulate their grief. *Booth v. Maryland* (1987), 482 U.S. 496, 504-07, 96 L. Ed. 2d 440, 449-50, 107 S. Ct. 2529, 2534. See also *People v. Walker* (1985), 109 Ill. 2d 484, 511 (Simon, J., concurring in part and dissenting in part) (testimony regarding the victim's personal characteristics should not have been admitted because a victim's standing in the community is not relevant to sentencing).

The Court concluded that victim impact information is irrelevant to a capital sentencing decision and that "its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." (*Booth v. Maryland* (1987), 482 U.S. 496, 503, 96 L. Ed. 2d 440, 448, 107 S. Ct. 2529, 2533.) The Court vacated the affirmance of the capital sentence and remanded the case for further proceedings. *Booth v. Maryland* (1987), 482 U.S. 496, 509, 96 L. Ed. 2d 440, 452, 107 S. Ct. 2529, 2536.

The majority concedes that the testimony of probation officer Ahlstrand at the defendant's death penalty hearing regarding the effects of the crimes on the victim's family members and on the woman who survived the attack would now be prohibited by *Booth*. The majority thus frames the issue by its acknowledgment that the defendant was sentenced to death in a manner which has now been adjudicated unconstitutional. Nevertheless, the majority lets the death sentence stand. In reaching this result, the majority ignores the Constitution, clearly established case law, and principles of fundamental fairness.

In *Booth*, the Supreme Court made it clear that the admission of victim impact evidence such as that of Ms. Ahlstrand is a serious infringement on a defendant's

constitutional rights and must be prohibited. The majority chooses to disregard the Supreme Court's decision in *Booth v. Maryland* and instead concludes that the defendant has waived any objection to being sentenced to death in an unconstitutional manner.

Waiver, however, unlike the rule announced by the Supreme Court in *Booth*, does not stem from a constitutional provision. The majority, in an attempt to circumvent the *Booth* decision, raises waiver to a position above the Constitution and allows a doctrine which has no constitutional foundation or significance to override the affirmative constitutional guarantee against cruel and unusual punishment. The result violates the supremacy clause, which establishes the primacy of the Federal Constitution over all conflicting law.

The majority argues that the defendant has waived any objection to the admission of the victim impact testimony because the defendant's first post-conviction petition did not assert as a basis for relief trial counsel's ineffectiveness in failing to object to the victim impact testimony on the ground that it was prejudicial, inflammatory or irrelevant. The majority relies on section 122—3 of the Post-Conviction Hearing Act, which provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or in an amended petition is waived." Ill. Rev. Stat. 1985, ch. 38, par. 122—3.

As the majority acknowledges, however, the first amended post-conviction petition did assert as a basis for relief that "the petitioner was denied equal protection and due process by the Illinois Courts['] inconsistent decisions on death penalty cases as to the admission of evidence relating to the effect of the death on the victim's family." Thus there was no true waiver because in his first post-conviction petition the defendant did in fact raise the unconstitutionality of the admission of the vic-

tim impact testimony. Although the Supreme Court declared admission of the testimony unconstitutional under the eighth amendment, it would be unreasonable to hold that the defendant waived any objection simply because he used a different constitutional amendment to challenge the testimony. While the majority notes that the first post-conviction petition challenged the constitutionality of the admission of the victim impact testimony, it fails to explain how waiver can be attributed to the defendant in the face of that challenge. Instead it merely states that this court affirmed the dismissal of the first post-conviction petition.

Notwithstanding its adherence to the waiver rule, the court did discuss Free's objection to the admission of the victim impact testimony in both his direct appeal (*People v. Free* (1983), 94 Ill. 2d 378, 425-27) and his first post-conviction appeal (*People v. Free* (1986), 112 Ill. 2d 154, 170). *Booth v. Maryland* tells us that the majority reached the wrong result both times. In fact, Justice Clark and I dissented from the court's affirmance of the defendant's sentence on the very grounds announced by the Supreme Court in *Booth*. (See *People v. Free* (1983), 94 Ill. 2d 378, 435-37 (Simon, J., concurring in part and dissenting in part) (admission of the victim impact testimony was highly prejudicial and violates the defendant's right not to be sentenced to death in an arbitrary and capricious manner).) Why is it now too late for this court to correct its previous errors, especially where a death sentence is at stake?

Moreover, even if, contrary to the majority's admission, the defendant had not raised the issue of the constitutionality of the admission of victim impact testimony in his first post-conviction petition, section 122—3 of the Post-Conviction Hearing Act, as the majority concedes, "is not an ironclad bar on multiple post-conviction petitions." (122 Ill. 2d at 376.) Although waiver is a useful

principle, "we have not hesitated to relax its application where fundamental fairness so requires." (*People v. Hamby* (1965), 32 Ill. 2d 291, 294.) This court has repeatedly relaxed the requirements of section 122—3 of the Post-Conviction Hearing Act and allowed new issues to be raised in a second post-conviction petition where fundamental fairness so requires. See, *e.g.*, *People v. Nichols* (1972), 51 Ill. 2d 244, 246; *People v. Hollins* (1972), 51 Ill. 2d 68, 70; *People v. Slaughter* (1968), 39 Ill. 2d 278, 285; *People v. Hamby* (1965), 32 Ill. 2d 291, 294.

Relaxation of the rule is particularly appropriate in a case such as this one, where both at the time the defendant filed his original appeal and at the time he filed the post-conviction appeal, it was not at all clear under existing Illinois law that the defendant could have raised a colorable eighth amendment argument against the use of the victim impact testimony. In fact, when this court considered the defendant's objection to the testimony on appeal, it suggested that victim impact testimony was admissible because "[i]n this phase of the sentencing hearing the State and defendant are allowed considerable leeway in the presentation of relevant evidence." (*People v. Free* (1983), 94 Ill. 2d 378, 426.) It is now clear that this court misstated the law in upholding the defendant's death sentence.

The majority argues that cases in which this court relaxed the waiver doctrine are distinguishable from the instant case because in those cases the proceedings on the original post-conviction petitions were "deficient in some fundamental way." But that is precisely the situation here. The Supreme Court has now made it clear that this court and the circuit court committed a fundamental error of great magnitude in allowing the imposition of the death penalty to stand when confronted by the unconstitutional admission of irrelevant and highly

prejudicial victim impact testimony in the capital sentencing hearing. Because the court in *Booth* recognized the serious shortcoming of a capital sentencing hearing that included such testimony, it vacated the imposition of the death penalty and remanded the case. Instead of following the same procedure, this court is compounding the errors it committed in the direct appeal and in the first post-conviction appeal by refusing to vacate the death sentence that was improperly imposed. The majority decision will simply result in unnecessary use of judicial resources for an appeal to the United States Supreme Court, a *habeas corpus* petition in the United States District Court, or a petition alleging ineffective assistance of counsel.

This post-conviction petition, which anticipated the Supreme Court's holding in *Booth v. Maryland*, presents this court with the opportunity to cure its two previous errors and ensure that justice is done. Instead, the majority is sending the defendant to his death in spite of its recognition that his sentence was "based on considerations that are 'constitutionally impermissible [and] totally irrelevant to the sentencing process.' " *Booth v. Maryland* (1987), 482 U.S. 496, 502, 96 L. Ed. 2d 440, 448, 107 S. Ct. 2529, 2533, quoting *Zant v. Stephens* (1983), 462 U.S. 862, 885, 77 L. Ed. 2d 235, 255, 103 S. Ct. 2733, 2747.