**UNITED STATES of America ex rel. Gilbert CRIST, Petitioner,**

v.

**Barbara J. DOLAN, Respondent.**

**No. 96 C 2218.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 13, 1997.

Gerardo S. Gutierrez, Chicago, IL, for petitioner.

Darryl B. Simko, Asst. Atty. Gen., Chicago, IL, for respondent.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Gilbert Crist ("Crist") initiated these 28 U.S.C. § 2254[1] ("Section 2254") habeas proceedings on his own, tendering a pro se Petition on the form provided by this District Court's Clerk's Office for that purpose. This Court then appointed Gerardo Gutierrez ("Gutierrez") to act as Crist's counsel on a pro bono basis, and Gutierrez has fulfilled that responsibility admirably. On December 24, 1996 Gutierrez filed an Amended Petition, which Crist has confirmed should supersede his earlier pro se efforts and should stand as his sole basis for relief,[2] and throughout the proceedings Gutierrez has dealt properly with each aspect of the case calling for law-

1. All further references to Title 28's provisions will simply take the form "Section—."

2. That desire on Crist's part was confirmed in Gutierrez' most recent (September 8, 1997) fil-

yer input. Despite Gutierrez' best efforts, however, the Amended Petition must be and is denied and this action is dismissed.

### Procedural Background

On January 6, 1994 Crist was convicted of attempted armed robbery following a bench trial in the Circuit Court of Cook County. As a Class X offender, Crist was sentenced to a 22–year prison term.

On May 18, 1994 Crist filed his first pro se federal habeas petition (in Case No. 94 C 2982). Because that initial petition disclosed on its face that Crist had a direct appeal of his conviction pending at that time, his Court promptly (on May 24, 1994) dismissed that first petition without prejudice because of Crist's failure to have exhausted all available state remedies.

On December 19, 1994 (with his direct appeal still pending), Crist filed in the Circuit Court of Cook County a pro se petition for post-conviction relief, the remedy provided by 725 ILCS 5/122–1. Because that Post–Conviction Hearing Act is the vehicle that the State of Illinois has provided for the express purpose of advancing claims of deprivation of federal constitutional rights (and in that sense the Post–Conviction Hearing Act is the state counterpart of Section 2254), and because a petitioner who invokes that remedy on his or her own is not inhibited in advancing whatever constitutional claims he or she may have by any asserted inadequacies of the petitioner's prior counsel (either of his or her trial counsel or, as Crist has since argued, of the appointed appellate counsel whose sharing of public defender status with his trial counsel created a conflict of interest that would discourage an attack on the trial counsel's inadequacy), it is important to this opinion's later analysis to identify the specific issues that Crist himself raised in his self-prepared post-conviction petition:

1. Crist there urged that there had been no probable cause to support his arrest.

ing, the "Reply to the Respondent's Answer in Light of the Decision of the United States Supreme Court in *Lindh v. Murphy.*"

2. In two related contentions, Crist complained that he had not been identified through a lineup, showup or "mugshot identification" (photospread), and generally that he had not been sufficiently identified as the offender.

3. Although Crist also complained there (as he now seeks to do once again) that he had been denied the effective assistance of counsel, in light of the legal doctrine of forfeiture discussed later in this opinion it must be noted that the *only* deficiencies in counsel's representation that Crist then claimed had to do with the assertions that his public defender trial counsel (who had replaced an earlier-appointed lawyer shortly before trial) had failed to comply with two requests by Crist:

    (a) to file a motion to quash the arrest and

    (b) to bring out, in challenging the various witnesses' identification of Crist, the changes in his appearance between the time of the robbery and the time of trial.

4. Finally, Crist argued there that the indictment's and the trial judge's failure to notify him of his vulnerability to Class X treatment because of his prior criminal record (a factor that subjected him to a far more severe sentence in the event of his conviction) denied him information that could have led him to seek a plea bargain rather than go to trial.

In the interest of greater continuity, this account of events will follow Crist's pursuit of his post-conviction remedy to its ultimate conclusion:rather than adhering to a strictly chronological sequence covering his direct appeal as well. In that regard the Circuit Court swiftly rejected Crist's post-conviction petition as "frivolous and without merit" in a January 3, 1995 oral ruling. Then, although Crist had no federal constitutional right to counsel for such post-conviction relief, the Cook County Public Defender's Appellate Division was appointed to represent him in his appeal from that dismissal. After the appointed counsel had considered Crist's petition, in June 1995 he filed a motion to withdraw under *Pennsylvania v. Finley,* 481 U.S.

551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) on the basis that the absence of any arguably constitutional deprivation meant the absence of any appealable issue under the Post–Conviction Hearing Act.[3] On August 24, 1995 the Illinois Appellate Court issued an unpublished order reciting that sequence and then stating:

> We have carefully reviewed the record in this case and the aforesaid brief in compliance with the mandate of *Pennsylvania v. Finley* and find no issues of arguable merit. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed and the judgment of the circuits court is affirmed.

Crist then played out the string by his November 1, 1995 filing of a pro se petition for leave to appeal to the Illinois Supreme Court, in which he set out a battery of claimed deficiencies that went well beyond what he had actually asserted in his own post-conviction petition. On January 31, 1996 the Illinois Supreme Court denied his petition for leave to appeal the dismissal of the post-conviction petition.

Back now to Crist's direct appeal, which was limited to a single issue: the failure of the state authorities to comply with the claimed statutory mandate to apprise Crist before trial of the state's intent to seek Class X sentencing (something attributable to his prior felony convictions) if he were convicted. Because the Illinois Supreme Court had recently rejected that argument in *People v. Jameson,* 162 Ill.2d 282, 291–92, 205 Ill.Dec. 90, 642 N.E.2d 1207, 1210–12 (1994), the Appellate Court affirmed Crist's conviction via its January 26, 1995 summary order. Although Crist did not seek to appeal that affirmance to the Illinois Supreme Court, that omission has significance only in confirming that he has now exhausted all available state remedies (in that instance by the lapse of time, which has rendered any future attempt at a direct appeal untimely)

With Crist thus having exhausted his state remedies as to that Class X issue, on July 17, 1995 he filed his second federal habeas petition (in Case No. 95 C 4127). Again this Court acted promptly, ruling in a July 25, 1995 memorandum opinion and order that

---

**3.** It should be remembered that on appeal the appointed lawyer was—as is always true in appellate procedure—limited to the issues that Crist himself had chosen to raise in his pro se petition.

Crist's argument that the Illinois Appellate Court had read *Jameson* incorrectly and that it should instead have been controlled by the dissent in that Illinois Supreme Court decision did not even arguably implicate any violation of Crist's federal constitutional rights.

As stated earlier, the current (and third) federal habeas petition came next, some nine months later. Because just nine days after Crist's third filing the Antiterrorism and Effective Death Penalty Act of 1996 was signed into law (despite its title, that legislation (the "Act") included sea changes in *all* federal habeas proceedings), and because that enactment was followed (1) by our Court of Appeals' pronouncement in *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc) that the new statutory provisions were retroactive and hence were applicable to cases such as this one and then (2) by the Supreme Court's granting of certiorari in *Lindh,* this Court deferred consideration of this case until word came down from the Supreme Court. With the Supreme Court's having reversed *Lindh* in that respect (—— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)), and with both counsel's post-*Lindh* submissions now in hand, the entire case is ripe for decision.

### Crist's Procedural Defaults

Even though the parties' filings have not spoken to this issue, in light of Crist's status as a repeat litigant something ought to be said about whether he is guilty of "abuse of the writ"—a potential ground for the denial of a federal habeas petition without reaching the merits. As described in the plurality opinion in *Kuhlmann v. Wilson,* 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2621 n. 6, 91 L.Ed.2d 364 (1986):

> The concept of "abuse of the writ" is founded on the equitable nature of habeas corpus. Thus, where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that "disentitle[s] him to the relief he seeks," the federal court may dismiss the subsequent petition on the ground that the prisoner has abused the writ.

■ Here Crist's original federal habeas petition (94 C 2982) should not count for that purpose because it was simply premature, having preceded his exhaustion of available state remedies. And although his second petition (95 C 4127) was resolved by this Court on the merits, Crist had not then acted to exhaust any potential state remedies (by pursuing a petition under the Illinois Post-Convictional Hearing Act) as to any claimed constitutional violations other that the *Jameson* issue.[4] It is true that congressional concern as to just that kind of piecemeal approach to the federal courts gave rise to the Act's inclusion of a stringent set of standards for second or successive federal habeas petitions (see Section 2244(b), implemented in this Circuit by our Court of Appeals' Circuit Rule 22.2), but the Act's nonretroactivity as declared in *Lindh* appears to save Crist from being dispatched on that score.

In terms of the pre-Act concept of abuse of the writ (which should be the standard in light of the Supreme Court's ruling in *Lindh* ), the procedural federal unavailability of Crist's now-advanced claims at the time of his second federal habeas petition—because they had not then been exhausted at the state level—establishes the necessary "cause" for his failure to present those claims at that time. As for the other branch of the abuse-of-the-writ inquiry, the familiar need to show "prejudice" (or "a fundamental miscarriage of justice") would require a look at the claims themselves. As the ensuing discussion reflects, however, that examination calls for rejection of those claims on procedural default (that is, forfeiture) grounds, so that the same consequence follows that would be called for if abuse of the writ were found to have taken place. This opinion turns then to consideration of the claims in terms of general habeas doctrine—not just an abuse-of-the-writ approach.

Crist's Amended Petition advances four claimed constitutional violations. But as a precondition to any current examination of the substantive merits of those contentions, Crist must first surmount the hurdle of their noninclusive in his state post-conviction petition. In that regard the usual procedural default—the existence of "an 'independent

---

**4.** Such nonexhaustion was not apparent from Crist's second habeas petition.

and adequate state ground' that preempts the need for separate analysis of federal claims" (*Cawley v. DeTella,* 71 F.3d 691, 694 (7th Cir.1995) citing *Jenkins v. Gramley,* 8 F.3d 505, 507 (7th Cir.1993), in turn citing *Coleman v. Thompson,* 501 U.S. 722, 746–51, 111 S.Ct. 2546, 2562–65, 115 L.Ed.2d 640 (1991))—lies in a convicted person's failure to appeal the dismissal of a postconviction petition (*Cawley,* 71 F.3d at 694–95).[5] But a far stronger basis for a holding of procedural default—more precisely, forfeiture—is presented by a situation where a present federal habeas petitioner has previously undertaken the pursuit of his post-conviction remedy in the state court but has *omitted* from that effort the now-advanced habeas claims that were equally known to him when he took the state Post–Conviction Hearing Act path. Forfeiture in that situation directly serves the basic policy of federalism that—with sharply limited exceptions—requires a convicted defendant first to submit his constitutional claims of error to the state courts for possible correction, rather than turning in the first instance to the federal courts.

This Court's colleague Honorable Marvin Aspen has put the matter succinctly in *United States ex rel. Sanders v. Detella,* 814 F.Supp. 690, 695 (N.D.Ill.1993), citing Farrell v. Lane, 939 F.2d 409 (7th Cir.1991):

> Likewise, if the prisoner neglects to raise a claim in a state petition for post-conviction relief, such claim being known or should have been known at the time of the petition, Illinois courts of appeals will typically invoke a procedural bar rather than address the claim on the merits. Consequently, those claims will not be reviewed under the guise of federal habeas corpus.

Though some additional fine tuning may be provided by the comprehensive exposition of the doctrine that follows here, that straightforward principle applies to Crist's situation and mandates the dismissal of his Amended Petition.

*Cawley,* 71 F.3d at 694 has made a like distinction, with a like result, where a defendant "chose to invoke the Illinois post-conviction review process, rather than attempting to go straight to federal court after his direct appeal." And although principles of claim preclusion (which is spoken of in the Illinois cases as res judicata) are not fully operative in the post-conviction context, *People v. Flores,* 153 Ill.2d 264, 180 Ill.Dec. 1, 606 N.E.2d 1078 (1992) has made it crystal clear that "[t]he Post–Conviction Hearing Act contemplates the filing of only one post-conviction petition" (*id.* at 273, 180 Ill.Dec. 1, 606 N.E.2d at 1083, citing *People v. Free,* 122 Ill.2d 367, 375, 119 Ill.Dec. 325, 329, 522 N.E.2d 1184, 1188 (1988)), a principle that is subject to modification only where "the proceedings on the initial petition were deficient in some fundamental way" (*id.,* again citing *Free,* 122 Ill.2d at 376, 119 Ill.Dec. 325, 522 N.E.2d at 1188)—or where "the claimed error is one which could not have been presented in an earlier proceeding" (*Flores,* 153 Ill.2d at 275, 180 Ill.Dec. 1, 606 N.E.2d at 1083). And our Court of Appeals has examined the presentation of more than one petition for post-conviction relief in the Illinois state courts through a similar lens of potential procedural default (*Neal v. Gramley,* 99 F.3d 841, 843–44 (7th Cir.1996)).[6] In the light of established Illinois law as reconfirmed in *Flores,* each of the Amended Petition's four claims must fail on forfeiture grounds. They will be discussed in turn on that basis, though it should also be stressed that the Illinois Attorney General has also identified the weaknesses of each of Crist's contentions on the merits.

As for Crist's claim that he was not properly admonished regarding his right to a jury trial, he admits that the trial judge *did*

---

5. *Hogan v. McBride,* 74 F.3d 144, 147 (7th Cir. 1996) has since cast substantial doubt on the bright-line test set out in *Nutall v. Greer,* 764 F.2d 462 (7th Cir.1985), by pointing to the post-Nutall developments in Supreme Court jurisprudence in *Coleman* and other cases. But that question need not detain the analysis here, which deals with a much more basic omission than any failure to file a long-shot petition for leave to appeal to the Illinois Supreme Court. Indeed, here Crist *did* try that route without success.

6. This opinion relies on Illinois law as read by the Illinois courts, rather than on *Neal*—in part because the analysis in the latter case proceeded from the then-existing premise of *Lindh* at the Court of Appeals level that the substantive standards of the Act, rather than pre-Act jurisprudence, applied. But the main reason for looking to the Illinois courts' reading of the availability of state remedies and of the state law consequences of not pursuing them is that state law *must* control in those respects.

explain that right as such, arguing instead that the deficiency in explanation lay in what preceded the trial judge's exposition: a mischaracterization of Crist's possible sentence. Quite apart from the omission of that claim from Crist's direct appeal (something that, if it were contended for by the State, Crist might counter by urging that his lawyers both at trial and on appeal were constitutionally incompetent), Crist himself omitted that claim—the basis of which he necessarily knew at the time that he brought his pro se post-conviction petition—from that petition. Although it is also really illogical for Crist and his counsel to frame that claimed deficiency in terms of his being misinformed about his right to a jury trial (after all, any asserted inaccuracy in the trial judge's telling Crist about the potential sentence in the event of his conviction would have *identical* significance in a bench trial), that is how Crist and his appointed counsel have posed the issue in the Amended Petition here. And that contention differs entirely from Crist's earlier post-conviction reference to the possibility of his seeking a plea bargain if he had been told of the Class X sentencing potential. So even aside from the state's persuasive argument that the claim does not involve any colorable *constitutional* deprivation, it must be found to have been forfeited: Crist has identified no cause whatever for his own failure to have tendered it to the state courts in his post-conviction petition.

■ Crist's second charge, that asserting the ineffective assistance of counsel, is the one on which his appointed counsel Gutierrez dwells most heavily. But once again it is unnecessary to address the merits of that claim. Indeed, if anything the forfeiture situation here is even more clear. It will be remembered that Crist *did* include an ineffective assistance claim in his post-conviction petition. But that claim was grounded in a totally different assertion of lawyer delinquency from the matters that he now raises in the Amended Petition.[7] There is no conceivable cause for Crist's having omitted all

of those now-asserted matters, which by definition were known to him from the very beginning. That present ineffective assistance claim, in its new guise, also fails on forfeiture grounds.

■ Next Crist complains that his appellate counsel on direct appeal labored under a conflict of interest, because that counsel came from the same public defenders' office as Crist's appointed trial lawyer. Once more Crist had every opportunity to raise that fully-known problem in his post-conviction petition—but he did not do so. And once more his failure to have done so can fare no better by reason of his having stated that argument for the first time when he sought leave to appeal to the Illinois Supreme Court from the Appellate Court's rejection of his post-conviction petition—a petition that had been entirely silent on that subject (cf. *Cawley*, 71 F.3d at 694–95). Again Crist's own delinquency, viewed in the matrix of his actual invocation of post-conviction relief without having included that readily includable claim, is a prototypical Procedural default giving rise to forfeiture of the claim.

As his final contention in the Amended Petition, Crist also says that his appellate counsel was ineffective for having failed to urge the ineffectiveness of his trial counsel. What has just been said as to the prior argument applies here for identical reasons and with identical force.

One last point may be worth making: the unavailability to Crist of the potentially overriding factor of a fundamental miscarriage of justice, which the Supreme Court has limited to correcting the conviction of a clearly innocent person. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 864, 130 L.Ed.2d 808 (1995 ) has reconfirmed that principle of demanding a showing of "actual innocence":

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would

---

7. It also goes without saying that having presented only a narrow contention of inadequate representation to the Circuit Court in his post-conviction petition, and then to the Appellate Court on appeal from the dismissal of that petition, Crist cannot point to his later impermissible attempt

to be more expansive in his petition for leave to appeal to the Illinois Supreme Court. That sort of topsy-turvy effort cannot be relied on as having given the Illinois state court system the required fair opportunity to treat the merits of his constitutional claim.

extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

Even though Gutierrez does his best to suggest Crist's actual innocence with a multifaceted attack on Crist's trial and appeal, the showing is simply insufficient to bring that limited exception to general habeas doctrine into play.

### Conclusion

Both sides have agreed that this action may properly be dealt with on the papers, without the need for an evidentiary hearing (see Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules")). This Court agrees (*id.*). That being so, the directive to "make such disposition of the petition as justice shall require" (*id.*) calls for its dismissal and the dismissal of this action—and this Court so orders.