(No. 81321.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAUL S. ERICKSON, Appellant.

*Opinion filed June 18, 1998.—Rehearing denied October 5, 1998.*

McMORROW, J., joined by HARRISON, J., dissenting.

Christina M. Tchen, Nancy S. Eisenhauer, Cyrus Amir-Mokri, Eric J. Gorman, Albert L. Hogan III and Sanjay K. Chhablani, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Arleen Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb and Michael Golden, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:
Following a jury trial in the circuit court of Cook County, defendant was found guilty of the murder, rape, unlawful restraint and concealment of a homicidal death in connection with the stabbing death of 15-year-old Elizabeth Launer. The State sought imposition of the death penalty. Defendant waived his right to a jury for sentenc-

ing. After a capital sentencing hearing, the trial court sentenced defendant to death. This court affirmed defendant's convictions and sentence. *People v. Erickson*, 117 Ill. 2d 271 (1987), *cert. denied*, 486 U.S. 1017, 100 L. Ed. 2d 216, 108 S. Ct. 1754 (1988). On November 30, 1990, defendant filed a petition for relief under the Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*). The trial court dismissed the petition, and this court affirmed the dismissal. *People v. Erickson*, 161 Ill. 2d 82 (1994). Subsequently, on December 15, 1995, defendant filed a second post-conviction petition, which was likewise dismissed by the trial court. Defendant now appeals the trial court's dismissal of his second post-conviction petition.

## BACKGROUND

The factual background of defendant's trial is set forth in the opinion in defendant's direct appeal (*People v. Erickson*, 117 Ill. 2d 271 (1987)) and only a brief summary is necessary here. On the evening of July 30, 1982, the victim, Elizabeth Launer, and four other teenagers, Lisa Soderberg, Renee East, Thomas Fairweather and Michael Blanchard, assembled for a party. The members of this group ranged in age from 13 to 16 years old. Defendant, who was then 25 years old, agreed to purchase alcohol and to rent a room for the group at the Holiday Inn in Rolling Meadows. Fairweather and Blanchard testified for the State that defendant solicited their help with a plan to rape Elizabeth Launer. The plan called for the victim to be killed so that the rape would not be reported. After Lisa Soderberg and Renee East left the party, defendant, Fairweather, Blanchard and the victim drove to an apartment complex in Rolling Meadows in defendant's car. Defendant had brought along neckties, which were used to bind the victim's hands and to gag her.

Defendant used a knife to cut off the victim's clothes,

at which point Blanchard walked away from the car, indicating that he wanted no part of what was occurring. According to Fairweather, defendant placed the victim on the front seat of the car and positioned himself between her legs. Fairweather heard the sound of a zipper being unzipped, and observed defendant lower himself onto the victim. Later, defendant and Fairweather walked the victim to a nearby retention pond. Fairweather held the victim's head while defendant stabbed her to death. Fairweather and defendant threw the victim's body and her clothing into the retention pond.

Defendant, Fairweather and Blanchard then returned to defendant's car and left the scene. According to Blanchard, during the ride from the scene defendant stated that he stabbed the victim in the heart, and he commented on how the blood had spurted when he stabbed her. At the time of trial, Fairweather had been charged as a juvenile with various offenses including murder. Pursuant to an agreement with the State, he would plead guilty to one of the charges and would receive a lenient sentence in exchange for his truthful testimony against defendant. Blanchard had been charged as a juvenile with concealment of a homicidal death, but the State had agreed to dismiss the charge in exchange for Blanchard's truthful testimony. Other witnesses for the State included Mickey Jaksch and Billy Johnson, both of whom related conversations with defendant in which defendant indicated that he had personally stabbed the victim.

Defendant testified on his own behalf. According to defendant, Thomas Fairweather had expressed an interest in having sex with the victim and discussed raping her. Defendant indicated that he held the victim's arms while Fairweather tied her hands together at the Rolling Meadows apartment complex. Defendant testified that he left the car at that point, and he did not know whether Fairweather had raped the victim. According to defen-

dant's testimony, he and Fairweather walked the victim to the retention pond, at which point Fairweather stabbed her. Defendant denied having sexual contact with the victim.

Following the presentation of this evidence, the jury found defendant guilty of murder, rape, unlawful restraint, and concealment of a homicidal death. The State sought the death penalty, and defendant elected to be sentenced by the court. At the first stage of the death penalty hearing, the court found that defendant was eligible for the death penalty because the victim was killed during the course of the felony of rape, and the victim was actually killed by defendant and not another party to the crime. Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6).

At the second stage of sentencing, the State presented the testimony of Billy Johnson, who described an incident that occurred about two weeks before the murder of Elizabeth Launer. According to Johnson, defendant suggested that they drive to O'Hare Airport to pick up a prostitute. Johnson testified that defendant said they would kill the prostitute after having sex. Rosalie Blackstock testified that in 1979 she encountered defendant, whom she had met once before, at a restaurant in Lombard. According to Blackstock, defendant forced her to have sex with him after she accepted his offer of a ride. Marge Rader Bass testified that in 1979, defendant invited her to a party in a motel room. When she and defendant arrived at the motel room it was empty. After 15 or 20 minutes, defendant pinned Bass to the bed and threatened to rape her or to tell her parents that she had seduced him. When Bass threatened to scream, defendant released her and took her home. About a week later the tires on Bass' car were slashed. About a week after that, Bass again encountered defendant. Defendant displayed a knife. While displaying a knife, defendant "apologized" for

slashing Bass' tires and stated that he should have slashed Bass instead.

Harvey Greenway, a detective with the Rolling Meadows police department, related a conversation with Joanne Combs. Combs indicated that she met defendant in March of 1980 when she was 14 years old and soon became involved in a sexual relationship with defendant which resulted in her becoming pregnant. Detective Greenway testified that Combs told him defendant had slapped her on several occasions and threatened to kill her if she told anyone the baby was his. Therese Moran testified that in 1981, at the age of 15, she conceived a child with defendant. Finally, one of defendant's fellow inmates in a Cook County jail hospital ward testified that defendant boasted about the murder of Elizabeth Launer.

The sentencing proceedings took an unusual turn when defendant commenced with the presentation of mitigating evidence. Defendant sought to call John Weliczko as an expert witness. Initially, Weliczko testified that he held a Masters degree in psychology from Harvard University and a Ph.D. in psychology from the University of Chicago. On cross-examination, however, Weliczko admitted that his degree from Harvard was in theological studies rather than psychology. Weliczko's claimed doctoral degree was not a Ph.D. from the University of Chicago, but a ministry degree from an affiliated institution, the Chicago Theological Seminary. The trial court found that Weliczko did not qualify as an expert in the field of psychology. However, the trial court allowed Weliczko to testify as a lay witness with respect to defendant's mental or emotional condition. Based on meetings with defendant and with his parents, Weliczko offered the opinion that defendant suffered from a narcissistic personality disorder. According to Weliczko, defendant needed to be the center of attention. Weliczko portrayed defendant to be deceitful and

manipulative, but added that he was also susceptible to manipulation by others because of his need for acceptance. A written "psychological evaluation" prepared by Weliczko was admitted into evidence.

At the conclusion of the second stage of the sentencing hearing, the trial court determined that there were no mitigating factors sufficient to preclude the imposition of the death penalty. The court sentenced defendant to death.

## ANALYSIS

### I. The Post-Conviction Hearing Act

The Post-Conviction Hearing Act permits a defendant to mount a collateral attack on his conviction and sentence based on violations of his constitutional rights. *People v. Coleman*, 168 Ill. 2d 509, 522 (1995); *People v. Mahaffey*, 165 Ill. 2d 445, 452 (1995). Post-conviction review is limited to matters which have not been, and could not have been, previously adjudicated. *Coleman*, 168 Ill. 2d at 522; *People v. Brisbon*, 164 Ill. 2d 236, 245 (1995). Determinations of the reviewing court on direct appeal are *res judicata* as to issues actually decided, and issues that could have been raised on direct appeal but were not are waived. *Coleman*, 168 Ill. 2d at 522; *Mahaffey*, 165 Ill. 2d at 452. Moreover, a defendant is entitled to an evidentiary hearing on a post-conviction claim *only* if he has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated. *Coleman*, 168 Ill. 2d at 537; *People v. Guest*, 166 Ill. 2d 381, 389 (1995).

This is defendant's second post-conviction proceeding; as discussed above, we previously affirmed the dismissal of defendant's first post-conviction petition. The Post-Conviction Hearing Act contemplates the filing of only one post-conviction petition, although successive petitions may be allowed where the proceedings on the

initial petition were deficient in some fundamental way. *People v. Flores*, 153 Ill. 2d 264, 273-74 (1992). The Act provides that any claim of a substantial denial of constitutional rights not raised in the original or an amended petition is waived. 725 ILCS 5/122—3 (West 1996); see *Flores*, 153 Ill. 2d at 274. Moreover, a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition. *Flores*, 153 Ill. 2d at 274; *People v. Free*, 122 Ill. 2d 367, 375-76 (1988).

However, an exception to these procedural bars applies for claims of ineffective assistance of counsel on direct appeal. This court has held that a defendant's failure to raise a claim of ineffective assistance of appellate counsel in his initial post-conviction petition will not operate as a waiver if the defendant was represented by the same attorney on direct appeal and in his initial post-conviction proceeding. In such cases, the claim of ineffective assistance of appellate counsel may be raised for the first time in a second post-conviction petition. See *Flores*, 153 Ill. 2d at 281-82. Mindful of these principles, we turn to the issues presented on appeal.

## II. Ineffective Assistance of Counsel

Defendant first argues that he was deprived of effective assistance of counsel during sentencing. Claims of ineffective assistance of counsel based on deficient representation of a criminal defendant are evaluated in accordance with the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Initially, the defendant must show deficient performance. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The defendant must establish that counsel's performance fell below an objective standard of

reasonableness. *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Judicial scrutiny of counsel's performance is highly deferential and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

Once deficient performance is shown, the defendant must also demonstrate prejudice in order to establish a claim of ineffective assistance of counsel. Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Defendant contends that trial counsel's reliance on John Weliczko as a mitigation witness and counsel's concomitant failure at sentencing to investigate and present available mitigating evidence of defendant's mental or emotional condition constitute ineffective assistance of counsel. The aspect of defendant's claim involving counsel's alleged failure to investigate and present mitigating evidence was raised and rejected in defendant's first post-conviction petition and is therefore procedurally barred under the principles of *res judicata* set forth in *People v. Flores*, 153 Ill. 2d 264 (1992), and described above. In his first post-conviction petition, defendant claimed that a proper investigation of mitigating evidence would have revealed that defendant suffered psychological, emotional and sexual abuse during childhood and that he had a history of alcohol and drug addiction. Defendant supported these allegations with af-

fidavits from two mental health professionals. Defendant also submitted affidavits from two former teachers who indicated that they could have testified on defendant's behalf at sentencing if they had been contacted. See *People v. Erickson*, 161 Ill. 2d 82, 89-90 (1994). This court concluded, however, that defendant suffered no prejudice under the *Strickland* test from trial counsel's failure to investigate and present this evidence:

"[D]efendant, then 25 years old, enlisted the aid of two juveniles to methodically chart a plan to isolate, bind, and gag a 15-year-old girl for purposes of raping her, stabbing her to death, and, in the end, concealing the corpse. (See *Erickson*, 117 Ill. 2d at 279-83.) For those crimes, defendant was remorseless. He bragged about the stabbing immediately after the deed. He boasted of the crimes days after and even did so much later when detained in a county jail awaiting trial. Other aggravating evidence, including the commission of another rape at knife point and a third threatened one, attests to some pattern of sexual assault against women.

Any laxity of counsel notwithstanding, what is offered to bolster the ineffectiveness claim does not show the result would 'reasonably likely' have been different excluding the possibility of arbitrariness. Briefly, the psychologists' reports could, at best, only suggest what may have explained defendant's criminal behavior of July of 1982. The evaluations were produced years after the crimes and, apparently, without the aid of the trial record, which revealed, through witnesses' testimony, defendant's actual behavior. The affidavits of the teachers, one from fourth grade and one from high school, disclose that neither maintained close contact with defendant after he left their respective classrooms. And, if anything, they show defendant to be polite, intelligent, and engaging, not a person troubled by a disturbed psyche which might account for his criminal behavior.

The record is also revealing as to the process of decision, underscoring the lack of prejudice which might have been occasioned by any deficiencies of counsel. The trial judge, whom defendant elected to impose sentence,

actually took into account the notion that defendant may have suffered from a personality disorder. In addition, the trial judge noted that a presentencing investigation report on defendant revealed a background free of what might be normally encountered given the nature of the crimes. It would appear, then, that the trial judge on his own considered, and rejected, the gist of what defendant hoped the evidence might show." *Erickson,* 161 Ill. 2d at 91-92.

In accordance with *Flores,* the above ruling is *res judicata* and forecloses relitigation of defendant's failure-to-investigate claim in the present proceeding.

Defendant contends that the principle of *res judicata* should be relaxed in this case because the second post-conviction petition is supported by evidence that was not presented with the first petition. In addition to the evidence submitted with the first petition, the second petition contains an affidavit from another mental health professional and affidavits from defendant's mother and brother indicating that defendant's family and friends were available to testify at sentencing. Defendant claims that the case at bar is similar to *People v. Eddmonds,* 143 Ill. 2d 501 (1991), where the court considered an ineffective assistance of counsel claim in a post-conviction petition even though the claim had already been rejected on direct appeal. The *Eddmonds* court noted that the rules of waiver and *res judicata* may be relaxed where the facts relating to the issue of ineffective assistance of counsel do not appear on the face of the record. Here, unlike *Eddmonds,* defendant's specific claim of ineffective assistance of counsel was rejected in the earlier post-conviction proceeding where defendant had a full opportunity to develop the claim using evidence outside the trial record. Now, however, defendant is attempting to re-litigate this claim with new affidavits that were not submitted with the first petition. *Eddmonds* does not permit a defendant to develop the evidentiary basis for a

claim in a piecemeal fashion in successive post-conviction petitions, as defendant has attempted to do here.

Defendant also insists that applying *res judicata* principles in this case would contravene the "basic tenets" of *Strickland*. Defendant maintains that in a claim of ineffective assistance of counsel based on the failure to investigate and present mitigating evidence, the defendant must be permitted to develop the record to show what mitigating evidence a competent attorney could have been presented. Again, however, defendant *already* received a complete opportunity to develop the record in the proceedings on his *first* post-conviction petition.

Defendant further argues that because his current post-conviction petition identifies mitigating evidence that was not included in his earlier post-conviction petition, the rule of *res judicata* must be relaxed as a matter of fundamental fairness. Defendant contends that the death penalty statute requires the sentencer to balance *all* the aggravating and mitigating evidence. In defendant's view, fundamental fairness demands that the additional evidence presented in his second post-conviction petition now be considered. We disagree. This court has explained that a death sentence is constitutionally reliable if the sentencer has duly considered all relevant mitigating evidence *which the defendant has chosen to present. People v. Coleman,* 168 Ill. 2d 509, 556-57 (1995). Defendant does not suggest that the trial court failed to consider any mitigating evidence that he chose to present at sentencing. Moreover, as we have indicated repeatedly in this opinion, defendant had an unrestricted opportunity to develop his ineffective assistance of counsel claim in his first post-conviction petition. Defendant offers no explanation why the new affidavits submitted with the present post-conviction petition could not have been submitted in the earlier proceedings. Furthermore,

we agree with the State that the new evidence is largely cumulative of what was presented in the prior petition. Under these circumstances, it cannot be said that application of the doctrine of *res judicata* is fundamentally unfair.

We turn now to the other aspect of defendant's ineffective assistance of counsel claim—that trial counsel's use of John Weliczko as a mitigation witness represents ineffective assistance because Weliczko's testimony and his written "psychological evaluation" constituted evidence in aggravation rather than mitigation. Defendant raised this claim in his first post-conviction petition, but this court did not reach the merits. Instead, this court concluded that this claim could have been raised on direct appeal, and was therefore waived. *Erickson*, 161 Ill. 2d at 89. Defendant presently argues, however, that the failure of his appellate counsel to raise this issue on direct appeal constitutes ineffective assistance of counsel. As discussed above, under *People v. Flores*, 153 Ill. 2d 264, 281-82 (1992), when a criminal defendant is represented by the same counsel on direct appeal and in his initial post-conviction proceeding, a claim of ineffective assistance of counsel on direct appeal may be raised in a second post-conviction proceeding. That is the case here.

Although defendant's claim is properly before this court, it fails on the merits. Defendant contends that Weliczko's testimony and his written report undermined the defense by portraying defendant as manipulative, aggressive and violent. While Weliczko's negative characterization of defendant may not have helped the defense, it did not contribute to the trial court's sentencing decision. The trial court explained in detail the aggravating factors forming the basis for its decision, but made no reference to Weliczko's testimony or written report. Rather, in sentencing defendant to death the court relied on its conclusions that defendant had devised the plot to

abduct, rape and murder Elizabeth Launer and that he produced the necktie with which she was bound, the sock with which she was gagged, and the knife with which she was killed. The court emphasized the heinous nature of the crime, observing that the victim was "stripped, tied, gagged, subjected to the most ultimate indignity that could be forced upon a female and then executed in a brutal and savage attack," that defendant ignored the victim's pleas for mercy, and that defendant later boasted about the crime. The court also cited defendant's prior history of sexual attacks against women.

The trial court did briefly refer to Weliczko's testimony in its summary of mitigating evidence. While the trial court may not have given the evidence great weight in mitigation, it does not appear that the court considered the evidence to be aggravating. Moreover, regardless of the opinions Weliczko offered, the circumstances of the crime and the other aggravation evidence presented by the State clearly portrayed defendant as calculating, aggressive and violent. It is unlikely the trial court would have drawn any different conclusion even if Weliczko had not testified. Thus defendant suffered no prejudice due to the counsel's use of Weliczko as a mitigation witness.

Defendant further argues that the cumulative effect of counsel's errors was prejudicial within the meaning of *Strickland*. According to defendant, counsel failed not only to present reliable evidence of defendant's mental condition, but to introduce any mitigating evidence at all. Defendant also contends that trial counsel should have argued that defendant was not eligible for the death penalty. As discussed above, this court has previously held that counsel's alleged failure to investigate mitigating evidence did not alter the outcome of the sentencing proceeding. See *Erickson*, 161 Ill. 2d at 89-92. Moreover, as explained below, we are unpersuaded that there is anything trial counsel could have done to have prevented defendant from being found eligible for the death penalty.

Defendant was found eligible for the death penalty pursuant to section 9—1(b)(6) of the Criminal Code of 1961 on the grounds that the victim was killed during the course of a felony, rape. At the time of the murder, section 9—1(b)(6) required proof that "the murdered individual was actually killed by the defendant and not by another party to the crime." Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6). Defendant contends that testimony by his family and friends would have supported the theory that the victim was actually killed by Thomas Fairweather rather than by defendant. Defendant relies on an affidavit from his brother indicating that he did not believe defendant killed the victim and affidavits from two of defendant's former teachers who stated that they were shocked to learn defendant had been accused of murdering Elizabeth Launer, and did not believe he could have been responsible. Even to the extent that such evidence might have been admissible at the eligibility stage of sentencing, it is exceedingly unlikely that it would have carried much weight with the trial court. Neither defendant's brother nor his former teachers had any firsthand knowledge of the crime; even if admissible, their mere opinions or beliefs as to whether defendant killed, or could have killed, the victim would lack any significant probative value. In contrast, the State presented compelling evidence that it was indeed defendant, and not any other party to the crime, who killed the victim. Both Mickey Jaksch and Billy Johnson testified that defendant had described to them how he had stabbed the victim after raping her. In closing argument during the guilt phase, counsel argued at length that Thomas Fairweather inflicted the fatal wounds. There is no reason to believe that repetition of this argument during sentencing would have affected the trial court's decision. Defendant has failed to establish a reasonable probability that testimony by his brother and former teachers, or argu-

ment by counsel, would have resulted in a finding favorable to defendant at the eligibility stage of the sentencing hearing.

Defendant alternatively argues that trial counsel's performance at sentencing was so deficient that prejudice may be presumed. Defendant contends that trial counsel conceded defendant's eligibility for the death penalty and failed to introduce credible mitigating evidence, thereby virtually assuring that defendant would be sentenced to death. As discussed, to show a violation of the right to effective assistance of counsel, a criminal defendant ordinarily must establish both deficient performance *and* resultant prejudice. However, a presumption of prejudice arises where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984). Defendant relies on *People v. Hattery*, 109 Ill. 2d 449 (1985), in which prejudice was presumed. In *Hattery*, although the defendant pleaded not guilty his attorney expressly conceded, during his opening statement and at other points in the trial, that the defendant had committed the crime of murder. Defense counsel presented no evidence, advanced no legally valid defense theory, and elected to make no closing statement. Defense counsel's apparent strategy was to show that the defendant was guilty of murder but did not deserve to be put to death. This court held, however, that "[c]ounsel may not concede his client's guilt in the hope of obtaining a more lenient sentence where a plea of not guilty has been entered, unless the record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy." *Hattery*, 109 Ill. 2d at 465. Under these circumstances, this court concluded that counsel had failed to subject the prosecution's case to the meaningful adversarial testing required under the constitution. *Hattery*, 109 Ill. 2d at 464.

The case at bar is readily distinguishable from *Hattery*. Unlike *Hattery*, counsel in this case never conceded defendant's guilt. Counsel aggressively cross-examined the State's witnesses and advanced the theory that another party was responsible for the crime. Contrary to defendant's argument, counsel did not concede defendant's eligibility for the death penalty. Rather, counsel advanced the theory that during the guilt phase the jury had concluded that Thomas Fairweather killed the victim and found defendant guilty as an accomplice. To this end, counsel sought to subpoena certain jurors to testify as to whether they believed the victim was killed by defendant or by Thomas Fairweather.

In any event, this court has held that the failure to contest death-eligibility does not in itself constitute ineffective assistance of counsel under *Hattery*. See *People v. Smith*, 176 Ill. 2d 217, 231 (1997); *People v. Holman*, 132 Ill. 2d 128, 162-63 (1989). With respect to the aggravation/mitigation stage of sentencing, defendant contends that trial counsel failed to introduce any valid mitigation evidence. Nonetheless, counsel vigorously cross-examined the State's witnesses at this stage of the proceedings. Given counsel's efforts, it cannot be said that counsel failed to subject the State's case to meaningful adversarial testing. Accordingly, prejudice cannot be presumed in this case.

III. Reliability of Defendant's Sentence

Defendant contends that the trial court's reliance on Weliczko's testimony and written report deprived him of the right to be sentenced on the basis of fair and reliable information. We disagree. The trial court was well aware of Weliczko's shortcomings as a witness and only allowed him to testify as a layman. As previously stated, it does not appear that the trial court attached significant weight to this evidence. Moreover, the negative characteristics suggested by Weliczko's testimony—that defendant was

manipulative, deceitful and misogynistic—are all amply established by the circumstances of the present crime and the other evidence in aggravation presented by the State.

Defendant also argues that he was deprived of his right under *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985), to a competent psychological evaluation. *Ake* dealt with the State's obligation to bear the expense of providing an *indigent* defendant with the assistance of a psychiatrist when issues of sanity or mental health are relevant to the case. In *Ake*, the trial court refused the indigent defendant's request for a court appointed psychiatrist to evaluate his sanity at the time of the offense. Nothing in *Ake* suggests that the State must verify the credentials of a mitigation witness who was *selected by the defendant*. Accordingly, *Ake* has no application here.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, November 11, 1998, as the date on which the sentence of death entered in the circuit court of Cook County is to be carried out. Defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1996)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*

JUSTICE McMORROW, dissenting:

I believe that defendant is entitled to an evidentiary hearing to prove his claim of ineffective assistance of appellate counsel. Accordingly, I dissent.

Defendant's conviction and sentence of death were affirmed by this court on direct appeal. *People v. Erickson*, 117 Ill. 2d 271 (1987) (*Erickson I*). The instant appeal concerns defendant's second attempt to obtain post-conviction relief from his convictions and sentence of death. In defendant's first post-conviction proceeding, defendant alleged, *inter alia*, that he received ineffective assistance of counsel during the sentencing phase of trial when trial counsel proffered the testimony and report of John Weliczko regarding defendant's emotional and mental condition at the time of the offenses. Defendant alleged that trial counsel failed to discover that Weliczko was not qualified to provide a psychological evaluation of defendant, and that, in fact, Weliczko had no *bona fide* psychological training or experience whatsoever. According to defendant, Weliczko's testimony was incompetent and unreliable, and trial counsel's decision to proffer that testimony actually undermined the strategy of the defense. Defendant also alleged that trial counsel failed to offer in mitigation significant, valid psychological evidence which was available at the time of sentencing. In support of the allegations raised in his post-conviction petition, defendant submitted affidavits from two qualified mental health professionals. The circuit court dismissed defendant's first post-conviction petition without an evidentiary hearing.

Upon review, this court affirmed the dismissal of defendant's first post-conviction petition. *People v. Erickson*, 161 Ill. 2d 82 (1994) (*Erickson II*). This court concluded that defendant had waived his claim that the presentation of Weliczko's testimony undermined the strategy of the defense because that claim could have been presented on direct appeal. This court also determined that defendant was not prejudiced by trial counsel's failure to present the additional psychological evidence offered by the mental health professionals.

I dissented from this court's decision affirming the dismissal of defendant's first post-conviction petition. *Erickson II*, 161 Ill. 2d at 96 (McMorrow, J., dissenting, joined by Harrison, J.). I concluded that defendant's claim with respect to the presentation of Weliczko's testimony was not waived. I also disagreed with the conclusion that defendant was not prejudiced by trial counsel's failure to present the additional mitigating evidence from the mental health professionals. In my view, defendant should have received an evidentiary hearing to prove his claim of ineffective assistance of counsel.

In the case at bar, defendant again raises a claim of ineffective assistance of counsel. On this occasion, defendant's claim of ineffective assistance of counsel is directed toward his appellate counsel on direct appeal. Defendant asserts that appellate counsel was ineffective for failing to raise on direct appeal the claim of ineffective assistance of trial counsel relating to the proffer of Weliczko's testimony and report. Because the merits of the underlying ineffective assistance of counsel claim must be assessed to determine the effectiveness of appellate counsel (*People v. Guest*, 166 Ill. 2d 381, 390 (1995)), defendant's second post-conviction petition again addresses the failings of trial counsel in presenting Weliczko's testimony. Specifically, defendant contends that Weliczko's testimony and report were incompetent and constituted aggravating rather than mitigating evidence, and that "[a]s a result of [trial] counsel's professional dereliction in relying on an unqualified witness, [defendant] never had an expert mental health professional testify on his behalf." As with defendant's first post-conviction petition, defendant's second post-conviction petition was dismissed by the circuit court without an evidentiary hearing.

The majority affirms the dismissal of defendant's second post-conviction petition. The majority treats

defendant's claim of ineffective assistance of counsel as having two distinct parts, as this court did in *Erickson II*. The majority asserts that the first aspect of defendant's claim relates to whether trial counsel was ineffective for failing to present in mitigation valid psychological evidence prepared by competent mental health professionals. The majority concludes that this argument was raised and rejected in *Erickson II* and, therefore, is procedurally barred under principles of *res judicata*.

The majority asserts that the second aspect of defendant's claim of ineffective assistance of counsel is whether trial counsel was constitutionally ineffective in presenting Weliczko's incompetent and aggravating testimony during the sentencing hearing. The majority acknowledges that under *People v. Flores*, 153 Ill. 2d 264 (1992), this aspect of defendant's claim is properly before this court. However, the majority determines that defendant suffered no prejudice from the presentation of Weliczko's testimony or report, and, therefore, that defendant is not entitled to an evidentiary hearing to prove his claim of ineffective assistance of counsel.

I agree with the majority that defendant's claim of ineffective assistance of counsel relating to the presentation of Weliczko's testimony is properly before us. Unlike the majority, however, I believe that defendant is entitled to an evidentiary hearing. In reaching this decision, I rely upon both Weliczko's testimony and the affidavits from qualified mental health professionals which defendant has included with his post-conviction petition. As the majority notes, it may be improper to consider the affidavits of the mental health professionals with respect to any of defendant's claims which are barred by principles of *res judicata*. However, there is no reason why the affidavits may not be considered when evaluating the claim which is properly before the court, *i.e.*, whether trial counsel was ineffective in proffering Weliczko's

testimony and report. Indeed, it is not possible to determine whether defendant has made a substantial showing that trial counsel's proffer of Weliczko's testimony was objectively unreasonable, or to determine whether defendant has shown that he suffered prejudice as a result of that testimony, without examining what further evidence could have been presented in its place.[1]

In my dissent from this court's decision affirming the dismissal of defendant's first post-conviction petition, I examined in detail Weliczko's testimony and the affidavits of the mental health professionals presented in defendant's petition. *Erickson II*, 161 Ill. 2d at 112-18 (McMorrow, J., dissenting, joined by Harrison, J.). That examination revealed the damning and prejudicial nature of Weliczko's testimony. I also observed that the trial court had never been advised of the true nature of Weliczko's allegedly fraudulent representations, nor advised of the extent to which Weliczko's evaluation of defendant differed from those given by the mental health professionals. For these reasons, I concluded that defendant was entitled to an evidentiary hearing to prove his claim of ineffective assistance of counsel. I believe that conclusion applies with equal force to defendant's claim of ineffective assistance of appellate counsel presented in the case at bar.

---

[1]The State argues that because the affidavits of the mental health professionals were not part of the record on direct appeal, they may not be considered in addressing defendant's claim that counsel on direct appeal was ineffective. However, a majority of this court held in *Erickson II* that defendant's claim that trial counsel was ineffective in proffering Weliczko's testimony could have been presented on direct appeal. As I note in the text, the only way this court can now determine whether defendant has made a substantial showing that trial counsel was ineffective in proffering Weliczko's testimony is to compare that testimony to the evidence offered in the affidavits of the mental health professionals.

I emphasize the serious nature of the allegations contained in defendant's post-conviction petition. Defendant asserts that he was sentenced to death following a sentencing hearing in which the *only* witness to testify in mitigation, Weliczko, provided a fatally unreliable and completely incompetent psychological and emotional evaluation of defendant. Defendant's petition shows that Weliczko was a fraud and a sham who had a history of engaging in deceptive activities, and, further, that his evaluation of defendant actually supported the State's argument in aggravation. Moreover, there is no question that Weliczko's testimony was considered by the trial court during sentencing, as this court itself noted in its decision affirming defendant's convictions and sentence on direct appeal. *Erickson I*, 117 Ill. 2d at 301-02. All of the foregoing indicates that the integrity of the capital sentencing process has been seriously compromised in the case at bar. Despite this fact, the majority refuses to grant defendant even an evidentiary hearing to prove his claim of ineffective assistance of counsel. I cannot join in this result.

Accordingly, I dissent.

JUSTICE HARRISON joins in this dissent.