FIFTH DIVISION
OCTOBER 19, 2007

1-05-2229

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 17670 |
| | ) | |
| DANIEL ESCOBEDO, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Lon William Shultz, |
| | ) | Judge Presiding |

MODIFIED OPINION UPON DENIAL OF PETITION FOR REHEARING

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant-appellant, Daniel Escobedo, was convicted of murder and sentenced to 40 years in prison. Defendant simultaneously filed both a postconviction petition for relief pursuant to the Postconviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2004)), and a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)). Treating them as a single, unified petition for postconviction relief, the trial court found the petition frivolous and patently without merit and summarily dismissed at the first stage of proceedings. On appeal, defendant argues (1) that the trial court erred when it treated the two petitions as a single postconviction petition without following the procedures

outlined by our supreme court in People v. Shellstrom, 216 Ill. 2d 45 (2005), and (2) that the trial court erred when it summarily dismissed his petition because his claim that a juror was sleeping during his trial was neither frivolous nor patently without merit. For the reasons below, we affirm the circuit court's dismissal of defendant's postconviction petition. In addition, we vacate the circuit court's dismissal of defendant's section 2-1401, which the circuit court re-characterized as a postconviction petition and we remand for compliance with Shellstrom.

BACKGROUND

Defendant's conviction stems from the January 16, 1983, murder of Ki Hwan Kim. As the vice-president of Fureal Leather and Furs, Kim's duties included collecting the day's sales and receipts from Fureal's sales area at the old International Amphitheatre at 42nd Street and Halsted Street in Chicago, Illinois. Defendant also worked for Fureal at the Amphitheatre, as did his nephew, Mitsuru Morales. On January 14, 1983, after Kim had collected the sales and receipts and left the building, defendant, Morales, and another employee, Wayne Haeffele, discussed a plan to rob Kim. The plan was further developed in a second discussion the following day.

On January 16, 1983, the plan was carried out. At approximately 5:30 p.m., Kim collected the day's sales and receipts, placed them in his briefcase, put on his coat, and left the building. As planned, Morales went out to the parking lot and told Kim that he had a telephone call. Kim and Morales returned to the building, where defendant stood by the telephone with the receiver in his hand, offering it to Kim. As Kim took the telephone receiver, defendant took a nightstick from behind the desk and struck Kim on the back of his head. As Kim dropped the telephone receiver and staggered backward, Haeffele grabbed Kim from behind, placed Kim in a choke hold, and

wrestled him to the ground. Defendant then stabbed Kim with a sharp object in both the head and the midsection.

Defendant and Haeffele then carried Kim's body to the backseat of Kim's car, which was parked in the parking lot in front of the building. Defendant then instructed Morales to clean up the blood while he and Haeffele disposed of Kim's body. Defendant and Haeffele returned an hour and a half later and picked up Morales. While driving Morales to his home, defendant gave Morales $50, which was his share of the robbery.

Kim's body was discovered by his wife the following morning shortly after 7 a.m. When Kim had not returned home by 10 p.m. the previous night, Kim's wife called his boss and friends, none of whom had any information as to his whereabouts. After remaining awake the whole night, Kim's wife noticed her husband's car covered with snow parked in front of their house. She found Kim's body on the floor of the car. An autopsy determined the cause of death to be multiple stab wounds to the head and chest.

Though Morales and defendant were both questioned by police, no arrests were made in connection with the murder until October 1999. In August 1999, Morales' cousin, Larry Lee, was arrested for possession of a stolen motor vehicle. Lee revealed to police that Morales had told him of his involvement in the 1983 murder of a Korean merchant. Shortly thereafter, Lee testified before a grand jury regarding what Morales had told him. On October 5, 1999, Morales was taken into police custody for questioning. After conferring with his mother and his lawyer, Morales gave a videotaped statement and was charged with murder and armed robbery.

After learning that Morales had been arrested and had implicated him in Kim's murder,

defendant fled to Mexico. Defendant was apprehended in Mexico in 2001 and, pursuant to an outstanding federal probation warrant, he was extradited to the Northern District of Illinois on June 17, 2001.

On July 17, 2001, defendant was indicted for his involvement in Kim's murder. Morales entered into a plea agreement pursuant to which he pled guilty to armed robbery of Kim and testified at defendant's trial regarding defendant's role in Kim's murder. In his own defense, defendant testified that he neither planned nor participated in the murder.

At the conclusion of the trial, the jury found defendant guilty of murder. The trial court denied his motion for a new trial, stating, "the evidence in this case as to [defendant's] guilt was overwhelming. Much of the evidence in this case derived from family members that testified against him." The defendant was then sentenced to 40 years in prison, and defendant's conviction and sentence were affirmed on direct appeal. People v. Escobedo, No. 1-03-3171 (December 23, 2005) (unpublished order under Supreme Court Rule 23).

On April 13, 2005, defendant filed a petition for postconviction relief pursuant to the Postconviction Hearing Act (725 ILCS 5/122-1 et seq. (West 2004)) as well as a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)). In the postconviction petition, defendant argued that trial counsel was ineffective when he failed to move for a mistrial after defendant alerted him to a juror sleeping during a critical part of the State's case. In his affidavit, defendant described the sleeping juror as a "heavy-set male, older man, with gray hair." The postconviction petition was accompanied by the affidavit, which the section 2-1401 petition adopted in its entirety. Defendant also attempted

4

1-05-2229

to obtain an affidavit from his cousin, Richard Galvin, who was present at the trial and observed the sleeping juror. Though he was unable to obtain an affidavit, defendant indicated that Galvin had informed him of his willingness to testify regarding the sleeping juror.

In its order dated May 3, 2005, the trial court noted that the section 2-1401 "Petition for Relief from Judgment" merely adopted the allegations in, and the affidavit accompanying, the postconviction petition. Because the arguments made on behalf of the section 2-1401 petition were "more appropriate for postconviction review," the court dealt with both the section 2-1401 petition and the postconviction petition as "a single, unified postconviction petition." The trial court determined that defendant's claims were frivolous and patently without merit and summarily dismissed defendant's petition for postconviction relief. Following the summary dismissal of his single, unified petition for postconviction relief, defendant filed this timely appeal.

DISCUSSION

On appeal, defendant argues that the trial court erred by recharacterizing his section 2-1401 petition as a postconviction petition for relief without adhering to the procedures outlined by our supreme court in People v. Shellstrom, 216 Ill. 2d 45 (2005). Defendant contends that before treating his *pro se* pleading as a postconviction petition, the trial court was required to notify him of the recharacterization, advise him of the consequences, and afford him the opportunity to either amend or withdraw the petition. The State concedes that the trial court failed to comply with the procedures set forth by our supreme court in Shellstrom, but asserts that the trial court's failure to do so amounted to "harmless error" because defendant filed his section 2-1401 petition simultaneously with his postconviction petition. We agree with defendant.

5

1-05-2229

The Postconviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2004)) enables criminal defendants to initiate collateral proceedings to challenge prior convictions on grounds of a substantial denial of constitutional rights. People v. Barrow, 195 Ill. 2d 506, 518-19 (2001). Proceedings pursuant to the Act that do not involve the death penalty can be viewed as consisting of three stages. People v. Gaultney, 174 Ill. 2d 410, 418 (1996). To survive the first stage, a *pro se* litigant's petition need only present the gist of a constitutional claim. 725 ILCS 5/122-2.1 (West 2004); People v. Jones, 213 Ill. 2d 498, 504 (2004). While this is a low threshold (Jones, 213 Ill. 2d at 504), the Act allows the trial court to summarily dismiss any petition it finds frivolous or patently without merit. 725 ILCS 5/122-2.1 (West 2004). At the second stage, an indigent petitioner is appointed counsel (725 ILCS 5/122-4 (West 2004)), an amended petition may be filed, and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2004)). If the trial court determines that the petitioner has made a substantial showing of a constitutional violation, then the petition passes to the third stage, at which the trial court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2004); People v. Edwards, 197 Ill. 2d 239, 246 (2001).

*Pro se* pleadings that allege violations of rights cognizable under the Act may be treated by the trial court, for all purposes, as petitions for postconviction relief pursuant to the Act even though not labeled as such, or at all. People v. Pinkonsly, 207 ll. 2d 555, 566 (2003). This practice is for the benefit of the *pro se* litigant. See People *ex rel* Palmer v. Twomey, 53 Ill. 2d 479, 484 (1973). However, because the Act contemplates only one postconviction petition (see 725 ILCS 5/122-3 (West 2004); People v. Erickson, 183 Ill. 2d 213, 222-23 (1998)), such a

6

recharacterization could potentially be to the detriment of a petitioner whose pleading, not intended to be filed pursuant to the Act, is not drafted with its restrictions on successive petitions in mind.

In People v. Shellstrom, 216 Ill. 2d at 57, our supreme court recently instituted certain safeguards to protect such criminal defendants from finding themselves unwitting petitioners under the Act. The defendant in Shellstrom had filed, *pro se*, a document labeled "Motion to Reduce Sentence, Alternatively, Petition for Writ of Mandamus to Order Strict Compliance with Terms of Guilty Plea." Shellstrom, 216 Ill. 2d at 48. Despite its label, the trial court treated it as a postconviction petition under the Act and summarily dismissed it as frivolous and patently without merit. Shellstrom, 216 Ill. 2d at 49. While reaffirming the trial court's authority to recharacterize a *pro se* pleading as a postconviction petition, our supreme court stated that, in the future, certain steps must precede the exercise of that authority. Shellstrom, 216 Ill. 2d at 53. Specifically, in Shellstrom, our supreme court held:

> "The [trial] court **must** (1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has."
> (Emphasis added.) Shellstrom, 216 Ill. 2d at 57.

The trial court's dismissal order in the case at bar was entered May 3, 2005, and our supreme court's opinion in Shellstrom was filed approximately three months later on July 21,

2005. Because the trial court did not have the benefit of the framework set forth in Shellstrom at the time it recharacterized defendant's postconviction petition, the trial court failed to inform defendant that it was recharacterizing his postconviction petition, that the recharacterization would mean that subsequent postconviction petitions would be subject to certain restrictions, and that defendant had an opportunity to withdraw the pleading and amend it if he wished to do so. While we have confirmed that Shellstrom does not apply retroactively to cases in which the direct appeal process was completed prior to the date on which Shellstrom was decided (see People v. Spears, 1-05-3600 (February 28, 2007)), Shellstrom does apply to cases that were pending in either the trial court or on direct appeal at the time Shellstrom was decided. People v. Granados, 172 Ill. 2d 358, 365 (1996) (Illinois Supreme Court's "decisions apply to all cases that are pending when the decision is announced, unless [the court] directs otherwise"). Therefore, since Shellstrom was decided while defendant's appeal was pending, the admonishment requirements provided by that case apply to the recharacterized postconviction petition that is the subject of defendant's appeal.

The State asserts that even if Shellstrom applies to defendant's case, the trial court's failure to provide defendant with the admonishments called for by Shellstrom amounted to "harmless error." We cannot agree. We cannot find anything in our supreme court's Shellstrom decision suggesting that failure to provide the Shellstrom admonishments may be subject to "harmless error" analysis; on the contrary, in Shellstrom, our supreme court specifically stated that before a *pro se* litigant's postconviction petition is recharacterized, "the [trial] court *must*" provide the *pro se* litigant with the required admonishments. (Emphasis added.) Shellstrom, 216 Ill. 2d at 57. In

light of our supreme court's <u>Shellstrom</u> opinion, we reject the "harmless error" analysis proposed by the State and we conclude that the admonishments provided in <u>Shellstrom</u> are mandatory.

Defendant's final argument on appeal is that the circuit court erred when it dismissed his postconviction petition as frivolous and patently without merit. Specifically, defendant asserts that he was denied a fair trial because a juror was sleeping during his trial and because his trial counsel was ineffective for failing to move for a mistrial after defendant alerted counsel to the sleeping juror.  We disagree.[1]

A defendant filing a postconviction petition is not entitled to an evidentiary hearing as a matter of right.  <u>People v. Mahaffey</u>, 194 Ill. 2d 154, 171 (2002).  On the contrary, an evidentiary hearing on postconviction claims is warranted only where the allegations of the postconviction petition, supported where appropriate by the trial record or accompanying affidavits, make a substantial showing that the defendant's constitutional rights have been violated.  <u>People v. Haynes</u>, 192 Ill. 2d 437, 465 (2000).  Our review of a first stage dismissal is <u>de novo</u>.  <u>People v. Edwards</u>, 197 Ill. 2d 239, 244 (2001).

Here, in his postconviction petition, defendant alleged that "trial counsel was ineffective when he failed to move for a mistrial because a juror was asleep during critical testimony of the State's case."  In an effort to support his allegation, defendant provided an affidavit in which he stated:

---

[1]We review the merits of this issue because if, upon remand, defendant chooses to withdraw the section 2-1401 petition, his claim regarding the sleeping juror, which he raised in his postconviction petition, would escape appellate review.

"During trial, I observed a juror asleep. I do not know the juror's name, however he was a heavy-set male, older man, with gray hair. I told my attorney about it immediately, however, [my attorney] never acted on the matter. After the trial, my attorney told me that he [, my attorney,] was friends with the same juror's son. A cousin of mine, Richard J. Galvin sat behind me at trial and observed the same. Galvin informed me that he would testify to the matter if called upon. I attempted to secure an affidavit from Galvin to support this petition, however it has been several months and I could not secure it in time for the petition."

First, we note that defendant has waived this issue by failing to object at trial when he noticed the allegedly sleeping juror. Faced with the same argument raised by defendant, in People v. Grenko (356 Ill. App. 3d 532, 536 (2005)), the Fourth District Appellate Court stated:

"The judge's presence in the courtroom assures defendants fair trials. The Supreme Court of Illinois has observed that "without the trial judge's presence in the courtroom, there is no judicial authority which can observe, cure, and deter objectionable conduct which may have the effect of prejudicing the defendant in the minds of the jury." People v. Vargas, 174 Ill. 2d 355, 364 (1996). How can a trial judge ever dispute a defendant's posttrial affidavit that a juror was sleeping unless the defendant brings the sleeping to the judge's attention at the time it occurs? Further, 'the atmosphere of the courtroom[] cannot be reproduced in the record,' so Illinois courts traditionally yield to the trial judge's singular position of assessing and determining the impact of improper conduct. Green v. University of Chicago Hospitals & Clinics, 258 Ill. App. 3d 536, 541-42 (1994). If we

10

allow a defendant to ignore sleeping jurors during the trial, but then argue the ill effects of their sleeping after the jury returns a verdict against them in what the trial judge determined to be a fair trial, we open the door for any convicted defendant who will swear, and/or get a relative to swear, that the jurors were sleeping."

We agree with the Grenko court's reasoning and we conclude that, had defendant brought to the trial court's attention the existence of a sleeping juror, the problem easily could have been addressed. See Grenko, 356 Ill. App. 3d at 536. As such, we conclude that defendant's failure to alert the court to the sleeping juror deprived the trial court of the opportunity to address the problem and, therefore, the issue is waived.

Second, in addition to the fact that defendant waived this argument by failing to bring it to the trial court's attention, we conclude that defendant's assertion that he was denied effective assistance of counsel when his trial counsel failed to bring it to the trial court's attention is without merit. Generally, a defendant's claim that his or her Sixth Amendment right to effective assistance of counsel is evaluated under the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Under that standard, a defendant must establish (1) that the attorney's assistance was objectively unreasonable under prevailing professional norms, and (2) that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. People v. Curry, 178 Ill. 2d 509, 519 (1997). Because a defendant must establish both of these prongs, the failure to establish either one is fatal to his or her claim. People v. Ceja, 204 Ill. 2d 332, 358 (2003). Here, the evidence presented at trial overwhelmingly confirmed defendant's guilt. Although we

11

accept defendant's allegations as true, still we cannot agree that there was a reasonable probability that, but for trial counsel's alleged failure to alert the trial court to the existence of a sleeping juror, the outcome of defendant's trial would have been different. Therefore, defendant has failed to allege the required element of prejudice and we must conclude that the trial court was correct when it determined that defendant's postconviction petition was frivolous and patently without merit.

In sum, we hold that Shellstrom applies to defendant's case since it was pending on appeal at the time our supreme court decided that case. Furthermore, we confirm that the admonishments provided by our supreme court in Shellstrom are mandatory and are not subject to "harmless error" analysis. Because defendant was not provided with the mandatory admonishments, we vacate the trial court's order summarily dismissing defendant's recharacterized section 2-1401 petition and, pursuant to our supreme court in People v. Shellstrom ,(216 Ill. 2d 45, 57 (2005), we direct the trial court, on remand, to provide the appropriate warnings and an opportunity to withdraw or amend the pleading. Finally, we affirm the trial court's dismissal of defendant's postconviction petition, in which defendant alleged that his constitutional right to a fair trial was undermined by the existence of a sleeping juror.

CONCLUSION

We affirm the trial court's dismissal of defendant's postconviction petition but, pursuant to our supreme court's decision in People v. Shellstrom, 216 Ill. 2d 45, 57 (2005), we vacate the judgment of the trial court dismissing defendant's recharacterized section 2-1401 petition and remand the cause to the trial court with instructions to afford defendant an opportunity to

withdraw this *pro se* pleading or, in the alternative, to amend it to include whatever additional postconviction claims he believes he has.

Affirmed in part, vacated in part; cause remanded with directions.

O'MARA FROSSARD and GALLAGHER, JJ., concur.